IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BURL WASHINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17−cv–1162−NJR |
| ) | |
| BAUGH, LISA MADIGAN, ) | |
| ATTORNEY GENERAL FOR THE ) | |
| UNITED STATES, ) | |
| DIRECTOR, CENTRAL OFFICE, ) | |
| WARDEN, USP MCCREARY, ) | |
| JUDE ONUCHA, K. BENNETT-BAKER, ) | |
| P. ROBINSON, PAUL LAIRD, ) | |
| PAUL HARVEY, B. AUTERSON, ) | |
| JAMES CROSS, DOUGLAS KRUSE, ) | |
| HAROLD GILLIAN, ROBINSON, ) | |
| W. LIRIOS, LYONS, ) | |
| DAVID GOLDSBOROUGH, ) | |
| STEVEN HOFFIMERR, ) | |
| FRANK FESTER, ) | |
| MARGARET HODGES, and ) | |
| DIRECTOR OF THE FEDERAL BUREAU ) | |
| OF PRISONS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Burl Washington, an inmate in Edgefield Correctional Institution in Edgefield South Carolina, brings this action for deprivations of his constitutional rights pursuant to both *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), and 42 U.S.C. § 1983.[1] Plaintiff requests monetary compensation in the amount of $30,000,000.

---

[1] Plaintiff has invoked § 1983 by checking a box on the complaint form, and he has named a single state actor, Lisa Madigan, the Attorney General for the State of Illinois. Unfortunately, however, Plaintiff has not included any allegations against Madigan, and it is unlikely that she would have been involved in any of the conduct that Plaintiff alleges, because his allegations address decisions made by Federal Bureau of Prisons employees. The Court presumes that

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; this action is subject to summary dismissal.

### The Complaint

Plaintiff alleges a conspiracy between John Doe #1, Loranth, Massa, Meeks, Garcia, Lapaine, John Doe #2, Barron, Rhonda Jones, Jude Onucha, K. Bennett-Baker, P. Robinson, John Doe #3, John Doe #4, John Doe #5,[2] Paul Laird, Paul Harvey, B. Auterson, James Cross, Baugh, Douglas

---

the inclusion of Madigan is an error based on a misapprehension of her role as Attorney General of Illinois, which the Court notes is distinct and separate from the United States Department of Justice and has nothing to do with its operation.

[2] Plaintiff identifies four unknown defendants in his list of defendants: Unknown Attorney General for the United States, Unknown Director/General Counsel for the Central Office, Warden of USP McCreary, and the Director of the Federal Bureau of Prisons. Of those, Plaintiff specifically identifies the BOP Director as John Doe #1, and the Warden of USP McCreary as John Doe #2. It is not clear who John Does #3-5 refer to, and Plaintiff makes no allegations against the

Kruse, Harold Gillian, Mrs. Robinson, Mrs. Lyons, Mrs. Lirios, David Goldsborough, Steven Hoffimerr, Frank Fester, Jason Jones, Margaret Hodges, and others[3] to deny or delay him adequate medical care for his vision problems. (Doc. 1-1, p. 2). Specifically, Plaintiff alleges that Defendants have denied him access to surgery, a glaucoma specialist, a low vision therapist, and assistance with ambulation, medication administration, and routine daily activities from December 2011 to December 2015 and beyond July 2016. *Id.*

Plaintiff had an appointment at Barnes-Jewish Hospital on December 8, 2011. (Doc. 1-1, p. 10). As he was being transported for the appointment, he alleges that Defendant Margaret Hodges kicked him. *Id.* When Plaintiff returned to FCI Greenville ("Greenville"), he reported this incident of staff misconduct to non-defendant Lt. Salem.[4] *Id.* Salem took Plaintiff to administrative detention; he also denied Plaintiff medical treatment for his injuries. (Doc. 1-1, p. 11). In retaliation for Plaintiff's report, Hodges filed a false and fabricated incident report. *Id.* Salem conducted an investigation, and after the investigation was completed, Plaintiff was released back into general population on December 13, 2011. (Doc. 1-1, p. 12). He reported the kick to Defendant Lyons and non-defendant Smith on December 15, 2011. *Id.* He reported the kick to Defendant Robinson on December 19, 2011. *Id.* Plaintiff requested documents from non-defendant Lt. Philips related to this incident, but when he received the documents on December 20, 2011, non-defendant Captain Cooper confiscated them and sent Plaintiff to the special housing unit ("SHU"). (Doc. 1-1, p. 13). Plaintiff alleges that

---

Unknown Attorney General for the United States or the Unknown Director/General Counsel for the Central Office. He has also not included the descriptor John Does #3-5 in his list of defendants.

[3] Of the listed individuals, Loranth, Massa, Meeks, Garcia, Lapaine, Barron, and Rhonda Jones are not among the listed defendants or included in the case caption. Additionally, Plaintiff's list of defendants includes only four unknown defendants, despite his repeated references to John Doe #5 in the body of the Complaint, and so Plaintiff has effectively failed to list Doe #5 in his list of defendants as well. That omission precludes the consideration of any claims against those individuals in this case. FED. R. CIV. P. 10. *See also Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

[4] Plaintiff also refers to a number of individuals in his statement of claim who are not listed in the case caption, the list of defendants, or included in Plaintiff's general statement of claim. The Court presumes that Plaintiff did not intend to proceed against these individuals and did not consider any potential claims against them.

3

Cooper took those actions in retaliation for Plaintiff's complaints regarding Hodges. (Doc. 1-1, p. 14).

Plaintiff was housed in the SHU from December 20, 2011 until March 19, 2012 with Cross's approval, despite the fact that he had not received an incident report or a shot, or committed any violations. *Id.*

Kruse and Cross approved and scheduled at least two surgeries to address Plaintiff's glaucoma. (Doc. 1-1, p. 8). On March 15, 2012, a surgery was performed at Barnes-Jewish Hospital by non-defendants Dr. Kraus[5] and Dr. Arthur. *Id.* Plaintiff's discharge instructions from the surgery required him to use a plastic eye-shield. *Id.* Fester and Kruse denied Plaintiff use of the eye shield. *Id.* Doe #1, Cross, Baugh, Fester, and Kruse all conspired to delay Plaintiff's follow-up between March 26, 2012 and April 27, 2012. *Id.*

Moreover, on March 16, 2012, two officers cuffed Plaintiff to his hospital bed and refused to allow him to use the bathroom. (Doc. 1-1, p. 18). As a result, Plaintiff soiled himself and was forced to lie in soiled linen until the next shift change. *Id.* On March 19, 2012, Goldsborough and Hoffimerr confiscated a letter to Plaintiff's son and his son's guardian. *Id.* After conversing with Kruse, they then confiscated all of Plaintiff's belongings, including an eye patch. *Id.* During shift change, Goldsborough and Hoffimerr met with Fester and non-party Jones. *Id.* During the next couple days, Jones and Fester deliberately turned on the air conditioner to make it uncomfortably cold in Plaintiff's room, in violation of doctor's orders. (Doc. 1-1, p. 19). On March 21, 2012, Fester struck Plaintiff on the back of the head. *Id.* When Plaintiff was discharged on March 22, 2012, the nurse gave him an eye shield, but Fester, non-party Pollman, and Kruse caused the eye shield to be confiscated. (Doc. 1-1, p. 20). It was not returned until March 27, 2012. *Id.* As a result, Plaintiff had difficulty sleeping, and the stitches in his left eye broke and began to bleed, causing swelling and

---

[5] Plaintiff sometimes spells Kraus's name as "Krause," but the Court presumes this is the same person.

pain. (Doc. 1-1, p. 21). The pressure in Plaintiff's left eye also began to increase, but Greenville staff did not notify Dr. Kraus, contrary to Plaintiff's discharge instructions. *Id*.

Plaintiff received a conduct report regarding alleged comments he made to Dr. Kraus on March 20, 2012. (Doc 1-1, p. 22). Plaintiff had asked Dr. Kraus what her involvement was in a disciplinary report he received on March 19, 2012. *Id*.

Plaintiff reported that Fester struck him to Baugh and non-party Mills on March 26 and April 11, 2012, respectively. *Id*. Despite his report, Doe #1, Cross, Baugh, and Fester conspired against him and continued to allow Fester to escort Plaintiff, effectively denying him medical care. (Doc. 1-1, p. 23).

Plaintiff alleges that on April 27, 2012, he met with Dr. Kraus and Dr. Arthur at Barnes-Jewish hospital and that they recommended that he undergo laser surgery to lower his IOP. (Doc. 1-1, p. 2). Plaintiff alleges that he was denied the treatment, however, because John Doe #1, Laird, Harvey, Auterson, Cross, Kruse, Robinson, Lyons, Lirios, Goldsborough, Hodges, and Hoffimerr transferred him in retaliation on April 30, 2012. (Doc. 1-1, p. 3). The transfer stemmed from a March 26, 2012 incident in which Lirios intentionally submitted a false and fabricated incident report and statement to Auterson. *Id.* On April 18, 2012, Kruse and Hoffimerr provided false and fabricated statements in support of the disciplinary report to Auterson, and Auterson found Plaintiff guilty, despite the fact that Plaintiff's conduct did not violate the Federal Bureau of Prison's Prohibited Code Act. *Id.* As a result of the disciplinary action, on April 25, 2012, Lyons, Robinson, and Cross submitted a request for Plaintiff to be transferred to an institution with higher security, more restrictions, and fewer privileges. *Id*. Plaintiff alleges that Harvey, Laird, and Doe #1 (the Director of the Federal Bureau of Prisons) became aware of the scheme to transfer him despite his glaucoma follow-up visit scheduled for April 25, 2012. (Doc. 1-1, p. 4). They approved the transfer despite knowing that the lack of treatment for glaucoma can cause blindness and/or death. *Id.* Plaintiff was

transferred from Greenville to the Federal Transit Center in Oklahoma on April 30, 2012, and from Oklahoma to United States Penitentiary McCreary in Kentucky on May 24, 2012. *Id.*

John Does # 1-5, Rhonda Jones, Barron, Bennett-Baker, and P. Robinson conspired to deny Plaintiff access to a glaucoma specialist between April 30, 2012 and February 7, 2013. (Doc. 1-1, p. 5). On July 22, 2013, Dr. Mohay recommended laser surgery for Plaintiff. *Id.* She told Onucha, Bennett-Baker, and P. Robinson of her treatment plan. *Id.* Plaintiff was informed that Dr. Moore had agreed to do the surgery on August 21, 2013. *Id.* Before Plaintiff could undergo the surgery, he was transferred again on October 23, 2013—this time to South Carolina. (Doc. 1-1, p. 6).

Plaintiff alleges that he could not undergo a scheduled laser surgery to address his glaucoma on December 23, 2014, because prison employees Loranth and Massa failed to place Plaintiff on NPO status for six to eight hours prior to the surgery. *Id.* The same thing happened again on June 10, 2015. (Doc. 1-1, p. 7). Before Plaintiff could be rescheduled again, he was transferred by Doe #1, Meeks, Loranth, and Massa on August 28, 2015 to the federal holdover facility in Atlanta and then to FCI Estill in South Carolina on September 9, 2015. *Id.*

Plaintiff alleges that Doe #1 conspired with Garcia and Lapaine to deny Plaintiff access to a glaucoma specialist from September 9, 2015 through December 31, 2015. *Id.*

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into a single count, as that appears to be Plaintiff's intention. The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

> **Count 1:** Defendants John Doe #1, Loranth, Massa, Meeks, Garcia, Lapaine, John Doe #2, Barron, Rhonda Jones, Jude Onucha, K. Bennett-Baker, P. Robinson, John Doe #3, John Doe #4, John Doe #5, Paul Laird, Paul Harvey, B. Auterson, James Cross, Baugh, Douglas Kruse, Harold Gillain, Mrs. Robinson, Mrs. Lyons, Mrs. Lirios, David Goldsborrough, Steven Hoffimerr, Frank Fester, Jason Jones, Margaret Hodges, and others conspired to deny or delay Plaintiff

> adequate medical care for his vision problems in violation of the Eighth Amendment.

The Court construed the allegations in the Complaint as a single claim for a number of reasons. Plaintiff has previously struck out and is no longer eligible for *in forma pauperis* status. Thus, he paid his full filing fee in this matter. Of note, this is not the first time that Plaintiff has appeared before the undersigned. Plaintiff has previously raised all of the allegations stemming from his incarceration at Greenville in this Court in Case Nos. 12-cv-854-NJR-DGW ("12-854"), 13-cv-613-NJR-DGW ("13-613"), and 13-cv-614-NJR-DGW ("13-614"). Those cases were all dismissed without prejudice for failure to exhaust administrative remedies.

Likewise, Plaintiff previously brought his allegations regarding his treatment at USP McCreary in *Washington v. Bennett-Baker*, Case No. 14-cv-172-GFVT, in the Eastern District of Kentucky ("the McCreary litigation"). That case was dismissed on the merits because the Court found that Plaintiff had failed to make out a *prima facie* case of deliberate indifference under the Eighth Amendment as to the medical providers and failed to establish that non-medical providers were personally involved in the conduct at issue. (McCreary Litigation, Doc. 21, E.D. Ken. Sept. 30, 2015).

Plaintiff also filed a case in the District of South Carolina, *Washington v. United States*, No. 16-cv-03913-BHH-KDW ("South Carolina litigation"). The South Carolina litigation is nearly identical to this case; it appears that Plaintiff made some changes on South Carolina's complaint form, but his statement of claim here is an exact copy of the one he submitted in that case. The South Carolina court dismissed all of the non-South Carolina defendants for lack of jurisdiction. (South Carolina litigation, Doc. 28). The remainder of that case remains pending.

The Court believes that Plaintiff's attempt to frame his case as a conspiracy is an attempt to get around this Court's prior findings that he failed to exhaust his administrative remedies and distinguish this case from Plaintiff's other suits. Plaintiff alleges here that he exhausted his claims by

7

way of grievances filed while he was in South Carolina at FCI Williamsburg and FCI Estill. (Doc. 1, p. 8). The Court has reviewed the documents attached to the Complaint in support of Plaintiff's assertion that he exhausted his remedies, and there is no mention of FCI Greenville or any of the associated defendants. The only way that these exhibits would show proof of exhaustion is if the Court construed Plaintiff's allegations as a single claim.

But that is not enough to save this case from dismissal. Plaintiff cannot proceed on his conspiracy claims. Plaintiff has attempted to bring claims across at least three institutions. While this raises questions regarding venue and jurisdiction, the claims would be subject to dismissal regardless.

As an initial matter, Plaintiff's allegations of conspiracy are vague and conclusory. To establish a *prima facie* case of a civil conspiracy, a plaintiff must show (1) an express or implied agreement among defendants to deprive plaintiff of his constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement. *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). Plaintiff has not alleged any facts that show or imply an agreement to deprive him of his rights. The common thread between all defendants appears to be their status as employees of the Federal Bureau of Prisons or Department of Justice, but that is not a sufficient basis for establishing a conspiracy. If this were the only deficiency in Plaintiff's Complaint, the Court may have granted him leave to re-plead, but there appear to be a number of other reasons why this suit does not belong here.

First, Plaintiff's claims in the McCreary litigation were previously adjudicated on the merits, barring their consideration here on res judicata grounds. *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002); *Hudson v. Hedge*, 27 F.3d 274, 276 (7th Cir. 1994). In federal court, res judicata applies where there is (1) an identity of the parties; (2) a final judgment on the merits; and (3) an identity of the cause of action. *U.S. ex rel. Lusby v. Rolls-Royce Corp.* 570 F.3d 849, 851 (7th Cir. 2009). The identity of the cause of action is determined by looking at the material facts of the lawsuit. *Czarniecki v. City of Chicago*, 633 F.3d 545, 549 (7th Cir. 2011).

The McCreary litigation proceeded against Bennett-Baker, Robinson, the Warden of McCreary (here identified as John Doe #2), and the Director of the Federal Bureau of Prisoners (present in this case as John Doe #1). (McCreary Litigation, Doc. 1). All four of these parties are present in this litigation. Plaintiff also alleged that the defendants were deliberately indifferent to his medical needs, failed to provide adequate medical care for his glaucoma, and deliberately transferred Plaintiff away from his glaucoma care provider. (McCreary Litigation, Doc. 1, p. 2). Plaintiff also specifically alleged that the conduct of the defendants in the McCreary action was in retaliation for the grievances Plaintiff filed after Hodges allegedly assaulted him on December 8, 2011. *Id.* at 4. In comparison, Plaintiff alleges here that officials at McCreary were deliberately indifferent to his glaucoma and that they transferred him out of McCreary, despite the fact that he had pending appointments with a glaucoma specialist—the same factual allegations he made in his earlier suit. Res judicata bars the claims based on Plaintiff's time at McCreary in this lawsuit because his prior case was dismissed on the merits, and Plaintiff has named four of the same parties here and alleged the same underlying facts.

A court previously found that the McCreary defendants did not violate Plaintiff's constitutional rights, and thus this Court will not consider Plaintiff's allegation that the same conduct previously found to be constitutional violated Plaintiff's rights as part of a conspiracy, even if the conduct is framed as a continuing violation. The doctrine of res judicata applies even when a plaintiff attempts to re-plead conduct as a continuing violation that was previously brought as claims regarding discrete events. *See Jordan v. O'Neil*, 28 F. App'x 548, 552-53 (7th Cir. 2002) (rejecting plaintiff's claim that a case involving discrete incidents was distinguishable from a continuing violation action on res judicata grounds). Accordingly, the Court will not consider claims against Doe #2, Onucha, Bennett-Baker, or any of Plaintiff's claims arising out of his time at McCreary because any legal theory based on their actions should have been brought in Plaintiff's prior suit. *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011) ("Where it applies, res judicata prevents

9

the relitigation of claims already litigated as well as those that could have been litigated but were not.").

Plaintiff also has named Jude Onucha, the clinical director of USP McCreary, who does not appear to have been a defendant in the McCreary suit. It cannot be said that there is identity of the parties as to Onucha, strictly speaking. However, "strict identity of the parties is not necessary to achieve privity. Privity applies to successive parties who adequately represent the same legal interests." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 301 (7th Cir. 1985). Plaintiff's previous suit named the chronic care provider (Bennett-Baker) and the prison eye doctor (Robinson), placing their management and care of Plaintiff's glaucoma at issue. The district court in the McCreary litigation ultimately found that Plaintiff's allegations amounted to a disagreement about the course of his medical treatment, not deliberate indifference. Now Plaintiff has alleged that Onucha, the clinical director at McCreary, was also deliberately indifferent to Plaintiff's medical need for glaucoma treatment and acquiesced in a retaliatory transfer. Onucha's interest in Plaintiff's care is identical to Bennett-Baker and Robinson's; they were all responsible for managing and facilitating Plaintiff's care. If Bennett-Baker and Robinson's approval of certain actions was not unconstitutional, as held by the Kentucky district court, then Plaintiff should not be able to reopen the question as to another member of the medical supervisory staff, particularly where that staff person could have been joined in the earlier litigation. For that reason, the Court finds that Onucha's inclusion in this lawsuit does not eliminate the res judicata effect of the McCreary litigation.

In the alternative, the Court finds that it does not have jurisdiction over Onucha, who is located in Eastern District of Kentucky, which is also where the conduct Plaintiff complains of occurred. Any civil action may be brought "in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) if there is no district in which an action

may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Plaintiff's claims against Onucha could not proceed in this Court in any event because Plaintiff has not alleged that Onucha resides here, and the events and omissions of which he complains occurred in the Eastern District of Kentucky. The Court therefore lacks personal jurisdiction over Onucha, and venue is improper here. For all of the above reasons, the Court will not consider any claims arising out of USP McCreary.

Plaintiff's claims arising out of his time in South Carolina also must be dismissed. In the Complaint, Plaintiff made claims against Doe #1, Meeks, Lorna, and Massa. Meeks, Lorna, and Massa were not listed among Plaintiff's defendants in Doc. 1-3. Failure to include parties in the case caption or among a list of defendants is grounds for dismissal. FED. R. CIV. P. 10; *see also Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

Even if Plaintiff had listed Doe #1, Meeks, Lorna, and Massa properly, the Court would still be inclined to dismiss them because this claim is duplicative of litigation proceeding in South Carolina. Federal courts may dismiss a suit "for reasons of wise judicial administration whenever it is duplicative of a parallel action already pending in . . . federal court." *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976)). The determination is discretionary, and district courts are given latitude to exercise that discretion, but generally, a suit will be considered duplicative if the claims, parties, and relief requested do not significantly vary between the actions. *McReynolds v. Merrill Lynch Co. Inc.*, 694 F.3d 873, 888-89 (7th Cir. 2012). Here, Plaintiff submitted identical complaints (at least initially) in both suits against the same parties. The Court therefore finds that the claims against the South Carolina individuals, even if the Court construes them as part of this suit, are

duplicative of the pending South Carolina suit raising the same conduct against the same people. The Court will not consider those claims further.

That leaves the claims arising out of Plaintiff's time at Greenville. These claims were all previously adjudged to be unexhausted. Specifically, in Case No. 12-854, Plaintiff raised claims (1) against Margaret Hodges for deliberate indifference to Plaintiff's serious medical needs from exposing Plaintiff to a cold van on December 8, 2011; (2) against Margaret Hodges for assault/excessive force for kicking Plaintiff in the leg on December 8, 2011; and (3) against Cooper and Hutchcraft for placing Plaintiff in the Special Housing Unit on December 20, 2011 in retaliation for pursuing grievances and evidence regarding the December 8th incident. (Case No. 12-854, Doc. 66, p. 2). The Court found that Plaintiff had not exhausted his remedies as to these claims and specifically rejected Plaintiff's contention that the grievance process was unavailable to him. *Id*. at 9. The case was dismissed without prejudice. *Id*.

Plaintiff also included claims against Greenville employees in Case No. 13-613. Specifically, the claims in that lawsuit were: (1) a retaliation claim against Goldsborough, Hoffimerr, Fester, and Jones related to events occurring March 16-22, 2012, while Plaintiff was hospitalized following glaucoma surgery; (2) a First Amendment claim against Goldsborough, Hoffimerr, and Jones for interfering with Plaintiff's First Amendment right to correspond with friends and family by confiscating written materials, paper, pens and envelopes; (3) a claim for deliberate indifferent to a serious medical condition against Goldsborough, Hoffimerr, Jones and Fester for confiscating Plaintiff's eyepatch and subjecting him to excessive air conditioning; (4) an excessive force claim against Fester for striking Plaintiff on the back of the head; (5) a retaliation claim against Goldsborough for filing a false disciplinary charge after Plaintiff showed correspondence to his doctor; and (6) a retaliation claim against Auterson for finding Plaintiff guilty of the false disciplinary charge resulting from the incident where Plaintiff showed correspondence to his doctor. (Case. No. 13-613, Doc. 66, p. 2). The Court adopted the Report and Recommendation of the

Magistrate Judge, finding that Plaintiff failed to exhaust his administrative remedies and dismissed that case without prejudice. (Case No. 13-613, Doc. 67).

Case No. 13-614 completes the triad of cases addressing Plaintiff's claims at Greenville. That case contained the following claims: (1) Baugh, Cross, Kruse, and Pollman retaliated against Plaintiff and showed deliberate indifference to his need for a replacement eye patch and post-surgical medical appointments between March 22, 2012 and April 20, 2012; (2) Gillian, Pollman, and Kruse were deliberately indifferent to Plaintiff's medical needs during January through April 2012; (3) Cross, Lyons, and Robinson arranged a retaliatory transfer of Plaintiff on April 30, 2012; (4) Pollman, Kruse, and Cross were deliberately indifferent to Plaintiff's glaucoma when they failed to provide him with his glaucoma medications at the time of his transfer; and (5) Tonaselke, Spence, Cross, and Jane Doe withheld Plaintiff's property in retaliation for his past grievances. (Case No. 13-614, Doc. 64, p. 2). Once again, the Court dismissed that case because it found that Plaintiff had failed to exhaust his administrative remedies. (Case No. 13-614, Doc. 66).

That raises the question of whether Plaintiff has now exhausted his administrative remedies with respect to the Greenville claims. Plaintiff attempts to put forth a slightly different legal theory in this case in comparison to his earlier filings, but the underlying facts are clearly the same—Plaintiff continues to allege that he was not provided adequate treatment for his glaucoma out of retaliation and ultimately transferred, as he did in his prior cases. The fact that Plaintiff is bringing a different legal theory does not restart the time for Plaintiff to exhaust his administrative remedies. Legal theories are not pertinent to the exhaustion analysis. *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) ("[T]he grievant need not . . . articulate legal theories."); *Watford v. Ellis*, 16-cv-582-NJR-DGW, 2017 WL 2645628 at *2 (S.D. Ill. June 20, 2017) (rejecting defendants' contention that grievances had to address precise legal theory at issue in present suit). There is no case law that suggests that pleading a new legal theory restarts the time for a federal prisoner to exhaust his remedies.

Plaintiff also has not alleged that he exhausted his remedies during the time between the end of his previous suits and the present suit with respect to the Greenville allegations. In the section of the form complaint that asks about Plaintiff's attempts to exhaust his remedies, Plaintiff refers to "Attachment #4." (Doc. 1, p. 8). When asked where relevant grievances were filed, Plaintiff lists South Carolina, FCI Williamsburg, FCI Estill, and the South regional office. *Id*. Greenville is notably absent. Moreover, Plaintiff's Attachment #4 does not refer to any Greenville defendants or any of the events that occurred at Greenville. (Doc. 1-4, pp. 4, 6, 8). It specifically references surgeries scheduled for December 23, 2014 and June 10, 2015, both more than two years after Plaintiff left Greenville. *Id*. In short, the exhibits do not show that the Greenville claims were properly exhausted since the end of Plaintiff's prior lawsuits.

There is also reason to consider the dismissals without prejudice as final orders, at least in part. Although all three of Plaintiff's prior cases in this Court were dismissed without prejudice, the orders consistently noted that Plaintiff had not completed key steps of the grievance process within the appropriate time period with respect to certain claims. The Seventh Circuit has said that although the "without prejudice" language is the correct language for a dismissal on exhaustion grounds, the unavailability of administrative remedies effectively converts the judgment to a final judgment. *Hernandez v. Dart*, 814 F.3d 836, 841 (7th Cir. 2016).

There is some indication that many, but not all, of Plaintiff's administrative remedies were unavailable at the end of his prior Greenville cases, and that the unavailability was attributable to Plaintiff, foreclosing any future action. A federal prisoner has twenty days from the date of the subject incident to initiate the grievance process. 28 C.F.R. § 542.14. Therefore, any grievances initiated as to the events of 2011 and 2012 at Greenville after the dismissal of Plaintiff's prior cases would be untimely. Furthermore, the dismissal of Case No. 12-cv-854 was in part based on Plaintiff's failure to resubmit rejected grievances or appeal decisions within the extended deadline

provided. Once the deadlines have passed, Plaintiff can no longer exhaust those remedies, and a dismissal for failure to exhaust effectively terminates the case.

Likewise, it appears as if there are no further administrative remedies for Plaintiff to pursue with regard to some of Plaintiff's other claims in cases No. 13-613 and No. 13-614.[6] In case No. 13-613, the Court found that grievances Nos. 682036, 685752, and 686319 did not exhaust Plaintiff's remedies because there was no evidence that Plaintiff resubmitted the grievances through the regular procedure after they were rejected as not "sensitive" by the Central Office. (Case No. 13-613, Doc. 66, pp. 13-16). The time to invoke the regular procedure has long passed, so to the extent that any of the claims in this lawsuit are contained in those grievances, the Court's prior decision that the grievances were not exhausted is a final decision, precluding proceeding in this case on those claims. The Court also found that grievance 684572 was never exhausted because there was no evidence that Plaintiff ever appealed to the Central Office. (Case No. 13-613, Doc. 66, p. 14). Any appeal would have had to be submitted to the Central Office within 30 days of the date of the Regional Director's signature, which in this case was May 24, 2012. *Id*. *See* 28 C.F.R. § 542.15. As that time had lapsed by the time that Plaintiff brought this suit, for all intents and purposes, the Court's prior decision regarding grievance 684572 was final.

With respect to Plaintiff's other claims in case No. 13-613, however, the claims were dismissed because the grievance process was still in progress at the time Plaintiff filed suit. Plaintiff filed suit in that case on July 30, 2012. The Court specifically found that grievance 681576, which addressed some events at Barnes-Jewish Hospital during the relevant time period, was still in progress at the time Plaintiff filed suit because his appeal was not received by the Central Office until August 7, 2012. (Case No. 13-613, Doc. 66, p. 13). Plaintiff received a response on the merits to that

---

[6] The Court adopted the Report and Recommendation of the Magistrate Judge and fully agreed with his "findings, analysis, and conclusions" in both cases. Because neither Report and Recommendation was objected to or modified by the District Judge, all citations here are directly to the relevant Report and Recommendation itself and not to the order adopting same.

grievance on November 27, 2012 from the Central Office. (Case No. 13-613, Doc. 66, p. 4). Grievance 683634 was also still in progress at the time Plaintiff filed No. 13-613. (Case No. 13-613, Doc. 66, p. 14). The Central Office issued a response to that grievance on April 25, 2013. (Case No. 13-613, Doc. 66, p. 5).

In Case No. 13-614, the Court also determined that grievance 694011 did not adequately exhaust Plaintiff's complaints against Cross, Lyons, and Robinson for transferring Plaintiff in retaliation because the grievance process did not end until March 25, 2013, nine months after Plaintiff filed suit. (Case No. 13-614, Doc. 64, p. 18). Although Plaintiff filed other grievances in reference to his claims in case No. 13-614, there was substantial overlap with the grievance set in case No. 13-613, so the Court will not discuss them further here.

There were three grievances in progress at the time Plaintiff filed his 2012 and 2013 suits: 681576, 683634, and 694011. Those grievances represent the only claims that Plaintiff could have pursued in a subsequent suit because the only bar to their litigation was that Plaintiff filed suit prematurely, a problem remedied by filing a new suit in a timely manner. The Court found that Plaintiff's other grievances failed to exhaust his remedies because Plaintiff had not completed the process or not adhered to the requirements of the process. By the time the Court made that determination, it was too late for Plaintiff to correct those errors. So to the extent that Plaintiff's claims here were grieved in any grievance besides 681576, 683634, or 694011, the decision finding those claims were not exhausted was a final decision.

Despite the fact that Plaintiff could have potentially brought suit on certain claims once he exhausted grievances 681576, 683634, and 694011, he had a narrow window of time to do so, and that window had closed prior to this suit. Plaintiff's Greenville claims are barred by the statute of limitations. Although typically affirmative defenses such filing after the statute of limitations are litigated by the parties after service, *see Jones v. Bock*, 549 U.S. 199, 212 (2007), a Court may invoke these defenses on § 1915A review when the availability of the defense is apparent on the face of the

Complaint. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002); *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992).

*Bivens* actions are considered personal injury claims and are governed by the statute of limitations of the state in which the injury occurred, in this case, Illinois. *Delgado-Brunet v. Clark*, 93 F.3d 339, 342 (7th Cir. 1996). In Illinois, personal injury claims are governed by a two year statute of limitations. *Id.*; 735 ILCS 5/13-202 (personal injury actions "shall be commenced within two years next after the cause of action accrued").

Plaintiff's claims arise out of his time at Greenville, and as discussed above, the Court will not consider any claims outside of that facility because Plaintiff has pursued suits involving that conduct in other jurisdictions, and it is dubious whether venue and jurisdiction are proper as to those claims. Plaintiff left Greenville on April 30, 2012, and so any claim he had arising out of his time there would have started accruing as of that date at the very latest. While there is some indication that Plaintiff's grievance activity related to those claims extended into 2013, there is no evidence that any grievances related to these events progressed beyond that time. Plaintiff brought this action on October 25, 2017, more than five years after the events at issue. Even assuming that Plaintiff's grievance activity tolled the statute of limitations, and tolling the time to the last possible date, the claims would still be untimely. Plaintiff's last grievance regarding the Greenville events received a response on April 25, 2013. If the statute of limitations began running on that date, Plaintiff would have had to file suit no later than April 25, 2015. He is approximately two and a half years late. By waiting more than three years after the last reported incident of grievance activity, Plaintiff is clearly beyond the statute of limitations.

The Court has rejected Plaintiff's attempts to frame his claims as a conspiracy based on vagueness, principles of res judicata, and case administration, but even if had not, framing his allegation as a conspiracy does not enable Plaintiff to avoid the statute of limitations problem discussed above. A civil conspiracy challenged in a *Bivens* action accrues at the time of each overt

17

act in furtherance of the conspiracy; it does not accrue in its entirety upon the last act. *Scherer v. Balkema*, 840 F.2d 437, 439 (7th Cir. 1988). Plaintiff could not bring claims against any Greenville defendant, even as part of a conspiracy, because the last act that he alleges the Greenville defendants were involved in took place on April 30, 2012, and the statute of limitations has expired as to claims arising out of that date, even if the Court tolls the statute of limitations to the end of Plaintiff's grievance activity.

Plaintiff has filed a sprawling Complaint involving dozens of defendants and non-parties. The Court finds that Plaintiff cannot bring some of his claims in this Court because they are barred by res judicata. The Court further finds that Plaintiff has a pending lawsuit in South Carolina that is duplicative of some of his other claims. Venue and jurisdiction is likely improper here as to both of those groups in any event. As to the events that actually occurred in this district and were previously dismissed without prejudice, the Court finds that Plaintiff has not exhausted his administrative remedies as to some of them, and the remainder are barred by the statute of limitations. According, this entire case will be dismissed with prejudice.

## Disposition

**IT IS HEREBY ORDERED** that this entire action is **DISMISSED with prejudice**. This dismissal will not count as a strike for the purposes of 28 U.S.C. 1915(g). The Clerk of Court is directed to enter judgment accordingly.

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be

nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. Fed. R. App. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

**DATED: January 30, 2018**

_____
**NANCY J. ROSENSTENGEL
United States District Judge**